UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION
CASE NO.6:19-CV-00290-TMC

| | | |
|---|---|---|
| SANDY HANEBRINK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORRANDUM IN SUPPORT OF** |
| | ) | **DEFENDANT TRZ MANAGEMENT,** |
| THE CITY OF SIMPSONVILLE, TRZ | ) | **LLC'S MOTION FOR SUMMARY** |
| MANAGEMENT, LLC, AND JOHN | ) | **JUDGMENT** |
| DOES 1-3, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendant, TRZ Management, LLC (hereinafter "TRZ") hereby submits this Memorandum in support of its Motion for Summary Judgment filed contemporaneously herewith.

## I.    INTRODUCTION

This is a premises liability action arising from Plaintiff's alleged fall from her wheelchair on September 13, 20216 at Heritage Park Amphitheatre ("Amphitheatre") in Simpsonville, South Carolina. On the night of the alleged incident, Plaintiff was volunteering for Touch the Future at a concert at the Amphitheatre. Touch the Future, a nonprofit organization, was partnered with TRZ to provide the liquor license for the concert and in return, Touch the Future would receive a percentage of the sales. (Pl. Dep. 118:1-3). The volunteers for Touch the Future were responsible for checking id's of concertgoers seeking to purchase alcohol at the concert.

Plaintiff arrived at the Amphitheatre sometime between 6:00 p.m. and 7:00 p.m. (Pl. Dep. 133:13). She entered the concert through a gate located at the bottom of the Amphitheatre between the VIP tent and the bathrooms. (Pl. Dep. 134:11-135:4). Plaintiff began setting up for the event when approximately thirty minutes later Plaintiff felt she was needed at the top of the

Amphitheatre to train new volunteers. (Pl. Dep. 140:16-141:19). While Plaintiff was travelling uphill towards the new volunteers, she noticed cables running across the sidewalk covered by a black plastic cable cover. (Pl. Dep. 142:16-144:17). Plaintiff was unable to cross over the cable cover on her own and had to request assistance from other volunteers to get across it. (Pl. Dep. 144:18-20); (Pl. Dep. 170:20-23) ("I knew it was there when I had help to get up it.").

Once Plaintiff arrived at the top, she began instructing the new volunteers. (Pl. Dep. 151:3-6). After a few minutes of training, Plaintiff planned to return to the bottom of the Amphitheatre. Plaintiff was very well aware of the condition of the sidewalk because she has travelled up and down this sidewalk many times in the past as well as only minutes before to train the volunteers. (Pl. Dep. 155:8-11). Plaintiff was also aware that there were cables stretching across the sidewalk covered by a cable cover. (Pl. Dep. 158:17-22). Despite this knowledge, Plaintiff did not attempt to go down another sidewalk to reach the bottom of the Amphitheatre nor did she inform anyone of the cable cover. Instead, Plaintiff began travelling back to the bottom on the sidewalk. As Plaintiff neared the same spot in the sidewalk that she previously encountered, Plaintiff did nothing to prevent herself from coming into contact with the cable cover that she knew was on the sidewalk. Plaintiff did not request assistance from anyone to help her over the cable cover during her descent. Plaintiff came into direct contact with the cable cover and allegedly it "dumped [her] and threw [her] out forward down the rest of the ramp to the concrete." (Pl. Dep. 152:7-11).

Plaintiff crawled back into her wheelchair she was then assisted to the VIP tent located at the bottom of the amphitheater. (Pl. Dep. 162:14-15). When asked whether she needed to go to the hospital, Plaintiff responded "no." (Pl. Dep. 164:13). Plaintiff continued volunteering until the concert was over and then, she went to the hospital. (Pl. Dep. 169:16-18).

On September 13, 2018, Plaintiff initiated this action against all Defendants. Plaintiff claims that the sidewalk and the cable cover were defective or dangerous conditions which caused her injuries.  Specifically, Plaintiff asserts the following claims: (1) Premises Liability, (2) Negligence/Gross Negligence/Recklessness, (3) Injunctive Relief Pursuant to Title III of the Americans with Disabilities Act, and (4) Injunctive Relief Pursuant to Title II of the Americans with Disabilities Act. (ECF No. 24).  This case was removed to this Court on January 31, 2019 (ECF No. 1), and Plaintiff filed an amended complaint on July 8, 2019. *Id.*

After two years of litigation and four scheduling orders, Plaintiff has failed to identify an expert, take a single deposition, or put forth a shred of evidence to support her claims. Plaintiff's claims fail and TRZ should be granted judgment as a matter of law because Plaintiff's own testimony is insufficient to support her allegations.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.E.2d 176 (1962).

When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff

lacks sufficient evidence. The nonmoving party, here the plaintiff, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also generally Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.E.2d 265 (1986). A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy, 769 F.2d 213, 214* (4th Cir. 1985). Therefore, "mere unsupported speculation is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc*., 53 F.3d 55, 62 (4th Cir. 1995).

In deciding a motion for summary judgment, a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc. .,* 477 U.S. 242, 251–53, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the defendant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson*, 477 U.S. at 248. An issue of fact is "material" only if the establishment of the fact might affect the outcome of the lawsuit under governing substantive law. *Id*. A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23.

## III.    ARGUMENT

The Court should grant TRZ's motion for summary judgment because Plaintiff's claims fail as a matter of law. Plaintiff alleges various claims against TRZ for the alleged dangerous

condition of a sidewalk within the Amphitheatre as well as the presence of cables and a cable cover across the same sidewalk. Plaintiff has failed to provide any evidence sufficient to create a genuine issue of material fact as to whether either of these allegations constituted dangerous or defective conditions. Furthermore, Plaintiff is precluded from recovery as a matter of law because the alleged dangerous condition was not only "open and obvious" but also known to the Plaintiff.

To establish negligence in a premises liability action, a plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) defendant's breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty. *See Hurst v. East Coast Hockey League, Inc.,* 371 S.C. 33, 37, 637 S.E.2d 560, 562 (2006).

Under South Carolina law, the threshold question is whether the defendant owed a duty to plaintiff. *Bass v. Gopal, Inc.,* 395 S.C. 129, 134, 716 S.E.2d 910, 912 (2011). "A party who operates a premise but is neither an owner nor lessee may have a duty of reasonable care with respect to an allegedly dangerous condition." *Dunbar v. Charleston & W.C. Ry. Co.*, 211 S.C. 209, 44 S.E.2d 314, 317 (1947). Here, it is undisputed TRZ was not the owner of the Amphitheatre but merely the manager of the concert on night of the subject incident. Liability in such a situation depends upon control of the premises, not necessarily ownership. *See Miller v. City of Camden*, 329 S.C. 310, 314, 494 S.E.2d 813, 815 (1997); *Nesbitt v. Lewis,* 335 S.C. 441, 446, 517 S.E.2d 11, 14 (Ct. App. 1999). When evaluating whether a person has sufficient control—and thus a duty to inspect the premises for dangerous conditions—a court should consider the person's power or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee the management of the property. *Benjamin v. Wal-Mart Stores, Inc.,* 413 F. Supp. 2d at 655–56 (citing C.J.S. Negligence § 388). "One who controls the use of property

5

has a duty of care not to harm others by its use." *Miller v. City of Camden*, 329 S.C. 310, 314, 494 S.E.2d 813, 815 (1997).

Additionally, the extent of TRZ's duty is also determined by Plaintiff's status at the time of the alleged incident. *See Sims v. Giles*, 343 S.C. 708, 715, 541 S.E.2d 857, 861 (Ct. App. 2001). Plaintiff alleges she was an invitee to the concert as she was a volunteer with Touch the Future. "An invitee is a person who enters onto the property of another at the express or implied invitation of the property owner." *Goode v. St. Stephens United Methodist Church*, 329 S.C. 433, 494 S.E.2d 827, 831 (S.C. Ct. App. 1997). However, Plaintiff could also be considered a licensee because she attended the concert for the benefit her nonprofit. *See Neil v. Byrum*, 288 S.C. 472, 473, 343 S.E.2d 615, 616 (1986) ("A licensee is a person who is privileged to enter or remain upon land by virtue of the possessor's consent").

Assuming Plaintiff is an invitee, a duty to warn an invitee of a dangerous or defective condition arises only in the case of latent or hidden dangers of which the landowner or operator is on actual or constructive notice. *H.P. Larimore v. Carolina Power & Light*, 340 S.C. 438, 531 S.E.2d 535, 538 (S.C.Ct.App.2000). The South Carolina Supreme Court has held there is no duty to warn of "open and obvious dangers." *Callander v. Charleston Doughnut Corp.*, 406 S.E.2d 361 (S.C. 1991).

Accordingly, to recover damages for injuries caused by a dangerous or defective condition, a plaintiff must show that (1) the injury was caused by a specific act of the defendant which created the dangerous condition, or (2) that the defendant had actual or constructive knowledge of the dangerous condition and failed to remedy it. *Pringle v. SLR, Inc. of Summerton*, 382 S.C. 397, 404, 675 S.E.2d 783, 787 (Ct. App. 2009) (quoting *Anderson v. Racetrac Petroleum, Inc.*, 296 S.C. 204, 205, 371 S.E.2d 530, 531 (1988)); *See Garvin v. Bi-Lo,*

*Inc.*, 343 S.C. 625, 541 S.E.2d 831 (2001) (granting of summary judgment when plaintiff failed to provide evidence stacked cans constituted a defective condition).

### a. This Court must grant Summary Judgment Because Plaintiff Cannot Provide any Evidence that the Sidewalk with a Cable Cover Constituted a Dangerous or Defective Condition

Plaintiff has presented no evidence to establish that the cable cover and sidewalk in question presented a dangerous or defective condition. Plaintiff has failed to provide proof of a dangerous or defective condition which is required for the imposition of premises liability under South Carolina law. *E.g., Shain v. Leiserv, Inc*., 328 S.C. 574, 576 493 S.E2d 111, 112 (Ct. App. 1997)*; Scott v. Cedar Fair Entm't Co.,* No Civ. A 0:11-00910, 2012 WL 5306222, at *6 (D.S.C. Oct. 26 2012)*. Thus Defendant is entitled to judgment as a matter of law.

Premises liability under South Carolina law has remained relatively unchanged for more than a decade:

> The landowner is not required to maintain the premises in such condition that no accident could happen to a patron using them. Under South Carolina law, reasonable and ordinary care for their safety and is liable for any injuries resulting from a breach of such duty. The landowner has a duty to warn an invitee only of latent or hidden dangers of which the landowner is on actual or constructive notice.

*Scott v. Cedar Fair Entm't Co.,* No Civ. A 0:11-00910, 2012 WL 5306222, at *3 (D.S.C. Oct. 26 2012) (internal citations added).

Plaintiff must establish that a particular condition was indeed hazardous before her claim may advance. *See Scott, supra* at *3 ("For a plaintiff to prove her claim for premises liability negligence, she has to establish the existence of a defective or dangerous condition.").  South Carolina does not recognize the doctrine of *res ipsa loquitor,* therefore, mere evidence of a fall over an object is not sufficient evidence to later classify that object as a hazard. *See  King v. J.C. Penny Co.*, 120 S.E.2d 229, 230 (S.C. 1961). *In Pringle v. SLR, Inc. of Summerton*, the South

Carolina Court of Appeals held "[t]he showing that a defendant created a condition which led to a plaintiff's injury is not, however, sufficient to survive a summary judgment motion unless there is evidence that in creating the condition, the defendant acted negligently." *Pringle v. SLR, Inc. of Summerton*, 382 S.C. 397, 675, S.C.2d 783 (Ct. App. 2009). Here, there is no evidence indicating the placement of the cable cover was negligent. A cable cover is designed as a safety device which prevents people from tripping or becoming entangled in cords, wires, cables, etc. The use of such device is evidence of reasonable care—Plaintiff has not provided any evidence to state otherwise.

The South Carolina Court of Appeals ruled in the defendant's favor in the analogous case of *Denton v. Winn-Dixie Greenville*, 312 S.C. 119, 439 S.E.2d 292 (Ct. App. 1993). In *Denton*, the Plaintiff alleged she was injured when she tripped over a concrete divider at the edge of a cart corral in a grocery store parking lot. Importantly, she admitted that she saw cart corral multiple times before her alleged injury. 439 S.E.2d at 294. The cart corral was designed and installed "in the parking lot to keep wayward grocery carts from interfering pedestrians or vehicular traffic." *Id.* The Court reasoned that it was foreseeable that the wayward carts could cause accidents and determined that "cart corral was itself a safety device." *Id.* Furthermore, the mere fact that someone might injury themselves on the cart corral "does not mean they are unreasonably dangerous or that a person exercising due care would not have them on the premises." *Id.* The Court ruled that the defendant had no duty to warn of the cart corral or to fence it off from the rest of the parking lot. *Id.*

Just as the cart corral was installed to remedy a potential hazard, the cable cover was placed to prevent concertgoers from tripping over loose electrical cords. The cable cover was a safety device installed to prevent injuries and Plaintiff has presented no evidence to the

contrary. An object, such as cable cover or cart corral is not dangerous merely because it is possible to stumble over it and fall. Plaintiff will possibly argue that the cable cover was defective because it did not include the sloped attachments. While this fact is disputed, it is immaterial and does not create an issue of material fact. The plaintiff in *Denton* presented a similar argument asserting that if the cart corral had railing, then she would not have been injured. *Id.* The Court concluded the "testimony was mere speculation." *Id*. There is simply no evidence that the cable cover over the sidewalk was dangerous therefore, summary judgment is appropriate.

Plaintiff has failed to name an expert willing to testify that a cable cover constituted a dangerous condition. While an expert may not be necessary in certain cases involving conditions which the lay person would immediately recognize as potentially dangerous, such circumstance is not present in this case. A cable cover is not a condition which would ordinarily be considered dangerous such as a foreign substance on the floor of a supermarket or a manhole on a landowner's property. Absent expert testimony demonstrating the cable cover was perilous, the cable cover is nothing more than that—a cable cover. Plaintiff chose to rely on her own testimony to show the cable cover was somehow improper or unreasonable, and this alone will be insufficient to satisfy this element of her claim. *See also Garvin v. Bi-Lo, Inc.,* 343 S.C. 625, 629, 541 S.E.2d 831, 833 (2001) (Court granted summary judgment when plaintiff provided insufficient evidence stacked cans were a dangerous condition).

Illustratively, in *Shelton v. LS&K, Inc.*, Plaintiff brought an action against the owner of the parking lot alleging a tree was a dangerous condition because it blocked her view of oncoming traffic which resulted in a car accident. *See Shelton v. LS&K, Inc.*, 374 S.C. 394, 648 S.E.2d 307 (Ct. App. 2007). To establish premises liability, Plaintiff needed to show the tree was

a dangerous condition. However, Plaintiff failed to even name an expert to offer expert testimony to demonstrate the tree was improperly located or maintained. Without such evidence, the jury had no basis to differentiate between an obstruction which is permissible and one which is not. *Id*. The Court granted summary judgment reasoning plaintiff's evidence would require the jury to engage in "pure conjecture and speculation in deciding how defendant should have maintained its parking lot." *Id*.

By the same token, without an expert, Plaintiff will be unable to satisfy the crucial element of causation for her claim. *See Ryan v. Eli Lilly & Co.*, 514 F. Supp. 1004 (D.S.C. 1981) ("Under South Carolina law, a plaintiff in a negligence action has the burden of proving that the injury was caused by the actionable conduct of the particular defendant." ). Plaintiff has alleged $181,005.62 in medical bills for injuries spanning from her alleged fall in 2016 to August of 2020. Unsurprisingly, Plaintiff has been unable to hire an expert to testify her alleged fall was the direct and proximate cause of these injuries. Plaintiff did not even go to the hospital immediately after the fall, yet now, she claims the fall caused her to suffer from a slew of injuries and conditions including a carotid dissection, urology issues and sleep problems. Without expert testimony, a lay juror, and likely the Court, will be unable to make the tenuous connection between these injuries and the fall. *Ellis v. United States*, 484 F. Supp. 4 (D.S.C. 1978) ("where a medical causal relation issue is not one within common knowledge of the layman, proximate cause cannot be determine without expert testimony); *See Carver v. Medical Soc. Of S.C.*, 286 S.C. 347, 334 S.E.2d 125, 127 (Ct. App. 1985) ("proof of proximate cause must…be established by expert testimony where either the origin of the injury is obscure and not readily apparent to a lay person or where there are several equally probable causes of the condition.").

Plaintiff has failed to provide sufficient evidence to give rise to a genuine issue of material fact as to whether the sidewalk and cable cover constituted a dangerous condition. Therefore, the Court should grant TRZ's motion for summary judgment as to Plaintiff's premises liability claim.

### b. Plaintiff is Precluded from Recovery as a Matter of Law Because the Alleged Dangerous Condition was both "Open and Obvious" and known to the Plaintiff

Plaintiff had equal or greater knowledge of the alleged dangerous condition and therefore, her premises liability claim fails as a matter of law.

The entire basis of an invitor's liability rests upon his superior knowledge of the danger that causes the invitee's injuries. If that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable. *Larimore v. Carolina Power & Light*, 340 S.C. 438, 448 531 S.E.2d 535, 540 (Ct. App. 2000). In short, the law holds an invitee's failure to recognize and negotiate a known or "open and obvious" danger precludes recovery. *Hackworth*, 366 F. Supp. 2d 326 (holding puddle was open and obvious); *Lucas v. Sysco Columbia, LLC*, 2014 WL 4976509 (D.S.C. 2014) (no duty to warn of open and obvious puddle); *Neil,* 288 S.C. 472, 343 S.E.2d 615 (S.C. 1986) (holding width and positioning of stairs was open and obvious). Plaintiff's recovery is precluded in the instant matter because the alleged dangerous condition was not only "open and obvious" but also known to the Plaintiff.

Even assuming the Court believes Plaintiff has presented sufficient evidence to give rise to a genuine issue of material fact as to whether the sidewalk and cable cover is a dangerous condition, Plaintiff had knowledge of the alleged condition because it was open and obvious. The subject sidewalk is part of an Amphitheatre which by definition is "an open space that is surrounded by high sloping land." *Oxford Learner's Dictionaries*. Plaintiff knew this definition was true of the subject Amphitheatre because Plaintiff admitted she traversed this same sidewalk

many times in the past for previous events with TRZ. Most significantly, Plaintiff had knowledge of the sidewalk and cable cover's condition on the night of the subject incident because she travelled up the sidewalk minutes before she travelled back down it. She was well aware of the sidewalk's level of incline and the cable cover positioned across it. The South Carolina Court of Appeals has stated "if he knows the actual conditions, and the activities carried on, and the dangers involved in either, he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him incurring the risk by entering or remaining on the land." *See Singleton v. Sherer*, 377 S.C. 185, 202-03, 659 S.E.2d 196, 205 (Ct. App. 2008).

Plaintiff assumed the risk presented and now, she seeks to recover for the consequences own actions.  The doctrine of assumption of the risk means "plaintiff may not recover for an injury to which he assents, i.e., that a person may not recover for an injury received when he *voluntarily* exposes himself to a *known and appreciated* danger." *See also Senn v. Sun Printing Co.*, 295 S.C. 169, 367 S.E.2d 456 (1988). The evidence is undisputed Plaintiff had knowledge of the condition of the sidewalk and cable cover but still made the intentional decision to travel back down it. Plaintiff assumed the risks associated with this venture to the bottom of the Amphitheatre when she chose not to notify anyone of the cable cover or request assistance.

It is well established, a Plaintiff injured by a known and acknowledged hazard is precluded from recovery.  In *Nash v. Marriott Hotel Servs., Inc.*, No. 7:07-cv-503, 2007 WL 3125315, at *1 (D.S.C. Oct. 23, 2007), the plaintiff was walking out of a restroom when he slipped and fell on a substance, believed to be vomit, in front of the restroom door. *Id.* However, previously on his way into the restroom, the plaintiff saw the substance and walked around it to enter the restroom, but upon exiting, apparently forgot that the substance was on the floor. *Id.* A witness testified that she notified three waitresses that there was vomit on the floor outside the

men's restroom and that one of the waitresses said that she would advise the front desk. *Id.* at *2. The court granted summary judgment for the defendant, finding that the danger was open and obvious and concluding plaintiff's "failure to remember that the substance was on the floor and inattentiveness upon exiting the restroom do not create a genuine issue of material fact in this case." *Id.*

Just as the plaintiff in *Nash* had knowledge of the vomit on the floor, so too did Plaintiff have direct knowledge of the cable cover and its potential alleged danger. Notably, Plaintiff testified the cable cover stretched across the sidewalk. Plaintiff's ability to see the cable cover clearly is evidenced by her description of the cable cover during her deposition. (Pl. Dep. 145:1-10). As the plaintiff in *Nash* could have avoided the vomit by stepping over it or walking around it, Plaintiff also could have avoided the cable cover. Plaintiff had the option to travel down the sidewalk on the other side of the Amphitheatre. By taking this route, Plaintiff could have avoided the cable cover entirely and still reached her intended destination. However, Plaintiff chose not to take this route because it would "take too much energy." (Pl. Dep. 170:2-5).

There is no genuine dispute of material fact as to whether the cable cover was open and obvious or whether Plaintiff voluntarily assumed the risk of coming into contact with it when she travelled back down the sidewalk without assistance. The Court must grant TRZ's motion for summary judgment as to Plaintiff's premises liability claim.

### c. Plaintiff Cannot Provide Sufficient Evidence of TRZ's Alleged Violation of Title III ADA

The Court should grant TRZ's motion for summary judgment as to Plaintiff's claim TRZ violated Title III of the ADA because Plaintiff lacks standing to bring her claim and TRZ does not own or operate the Amphitheatre within the meaning of Title III.

Title III of the ADA provides "[n]o individual shall be discriminated against on the basis of a disability in the full and equal employment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of accommodation." 42 U.S.C. § 12182(a). "The ADA does not require a place of public accommodation to provide a plaintiff with the *ideal or preferred accommodation*; rather, the ADA requires that a defendant provide a plaintiff with an accommodation that is reasonable and permits the plaintiff to participate equally in the good, service, or benefit offered." 1 Americans with Disab. Pract. & Compliance Manual § 4:1, Nondiscrimination Mandate (emphasis added).

Plaintiff does not have standing to bring her claim under the ADA against TRZ. In ADA cases, a "Plaintiff does not have standing to obtain injunctive relief if he cannot demonstrate a likelihood that he will suffer future discrimination at the hands of the defendant." *Gregory v. Otac, Inc.*, 247 F. Supp.2d 764, 770 (D. Md. 2003). Plaintiff has not provided any evidence to indicate that there is even a possibility that she could suffer the alleged discrimination again in the future as a result of TRZ.

In support of this point, the Court should consider Plaintiff's past use of the premises. *See also Dempsey v. Harrah's Atl. City Operating Co.*, LLC, Civil No. 08–5237, 2009 WL 250274, at *3, 2009 U.S. Dist. LEXIS 7551, at *8 (D.N.J. Feb. 2, 2009) (applying four factors to determine the likelihood of future injury: "(1) the plaintiff's proximity to the defendants' place of public accommodation; (2) the plaintiff's past patronage at the facility; (3) the definitiveness of the plaintiff's plan to return; and (4) the plaintiff's frequency of travel near the facility"). Plaintiff's past use of the Amphitheatre indicates Plaintiff has consistently been able to navigate the Amphitheatre at numerous events in the past without issue or

complaint. Plaintiff has testified she has previously volunteered at "six to ten" events at the Amphitheatre. Pl. Dep. 119:12-120:17 ("Six to ten"). Plaintiff even admitted she always travelled on the subject sidewalk at every event at which she volunteered. *See* Pl. Dep. 195:18 ("I went the way I always go"); Pl. Dep. 170:7 ("So that's the way we always go"); Pl. Dep. 197:1 ("I decided to go the route I always go while I'm there"); Pl. 197: 14-15 ("I went down the ramp the way I always go down the ramp"); Pl. Dep. 198:4 ("that's the way I always go."). *See Vandeusen v. Riverbanks Society*, Not Reported F. Supp. 2d, 2008 WL 3010157 (June 16, 2008) (granting summary judgment because defendant employee submitted affidavit averring the Riverbanks Zoo was ADA compliant and Plaintiff could not offer any contradictory evidence as she was a regular visitor for decades and never filed a complaint about access issues or potential ADA violations.).

Despite Plaintiff's history of visiting the Amphitheatre, she has never asserted the Amphitheatre was non-compliant until the instant lawsuit. *See Watson v. City of Mason*, No. 1–04–283, 2005 WL 3018690, at *5 (S.D.Ohio November 9, 2005) [Title II ADA claim dismissed where plaintiff did not make the need for an accommodation clear to the defendant before filing her lawsuit]. Plaintiff may argue she has informed individuals of the Amphitheatre's non-compliance, but the only evidence she has to support this contention is her own testimony and she admits she has never made a complaint in writing. (Pl. Dep. 194:5-8.). Based on the evidence, it seems the only time Plaintiff ever experienced difficulty travelling up the sidewalk of the Amphitheatre was when a cable cover was allegedly placed in her path of travel. Since the cable cover has been removed, Plaintiff is unlikely to suffer any future injury at the Amphitheatre. Therefore, the Court should grant TRZ's motion for summary judgment as to Plaintiff's claim under the ADA because Plaintiff has failed to prove

Additionally, to establish a claim under the ADA, Plaintiff must offer evidence to prove TRZ controls the Amphitheatre in such a way that TRZ could alter or repair it to comply with the ADA. Title III of the ADA applies to "any person who owns, leases (or leases to), or operates a place of public accommodation." *Id.* The ADA does not define the term "operates" and as such, the Court should construe it according to its ordinary and natural meaning. *See Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063, 1066 (5th Cir. 1995) (finding the term "operates" means "to put or keep in operation," "to control or direct the functioning of," or "to conduct the affairs of; manage."). In the amended complaint, Plaintiff proposes the Amphitheatre's "non-compliant ramps and pathway slopes…should be rebuilt in order to correct the slope." (ECF No. 24).

Plaintiff has failed to offer any evidence or testimony to demonstrate TRZ has the power to implement these proposed modifications. In fact, the evidence reveals the exact opposite. TRZ has a contract with Co-Defendant City of Simpsonville to provide "management services, including operations and marketing services" for public events within the Amphitheatre. *See Ex. A.* In the contract, TRZ is expressly defined as the "manager" and City of Simpsonville is defined as the "owner." *Id.* As the manager, TRZ is responsible for "management, ticketing, sales and marketing, premium seating programs, parking, security, food and beverage, artist and promoter relations, operations and everything else related to the event on the day of the event at the facility." *Id.* Significantly, TRZ is expressly not responsible for "capital improvements" which includes "any and all building additions, alterations, repairs, or improvements." Even further, TRZ is not required to "undertake any of compliance activity to meet requirements under law, nor shall [TRZ] have any liability under this Agreement therefore, if such activity requires any Capital Improvements or Capital Equipment purchases." *Id.*

As merely the manager of the Amphitheatre, TRZ does not have control over the alleged discriminatory conditions of the Amphitheatre, and cannot be held liable as an "operator" under Title III of the ADA. Plaintiff's proposed modifications of the Amphitheatre constitute "capital improvements" within the contract between TRZ and the City of Simpsonville. Pursuant to the plain language of the contract, TRZ does not have the power to alter, repair, or improve the Amphitheatre. Additionally, if the Amphitheatre's ramps and pathways are non-complaint, the contract provides TRZ lacks the power to take any action to bring them in compliance or otherwise cause them to meet the requirements set forth by law. Plaintiff has presented no evidence whatsoever contradicting the terms of the contract, or demonstrating TRZ has any control over the spaces allegedly in violation of the ADA.

Therefore, the Court should grant TRZ's motion for summary judgment as to Plaintiff's claim TRZ violated Title III of the ADA because Plaintiff cannot establish TRZ can even be held liable under this statute.

### d. Plaintiff Cannot Provide Sufficient Evidence of TRZ's Alleged Violation of Title II of the ADA

The Court should grant TRZ's motion for summary judgment as to Plaintiff's claim TRZ violated Title II of the ADA because TRZ cannot be subject to liability under Title II as a private entity.[1]

To establish a prima facie case under Title II of the ADA, Plaintiff must show that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) such exclusion, denial of benefits, or discrimination was by reason

---

[1] In Plaintiff's Amended Complaint, Plaintiff does not specify whether her allegation of violations of Title II is against all defendants or solely Defendant City of Simpsonville. Therefore, out of an abundance of caution, TRZ is addressing this allegation.

of his disability. *Spencer v. Easter*, 109 Fed. App'x 571, 573 (4th Cir.2004) (citing cases). Title II of the ADA defines the term "public entity" to include:

(A) any State or local government;

(B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and

(C) the National Railroad Passenger Corporation, and any commuter authority.

42 U.S.C. § 12131(1).

Title II of the ADA is inapplicable to TRZ as it is not a public entity. TRZ is a limited liability company which does not function, in any way, as a part of a state or local government. Plaintiff will be unable to put forth any evidence TRZ qualifies as any of the named definitions of a "public entity" within the statue.

Plaintiff will be unable to offer sufficient evidence to give rise to a genuine issue of material fact as to whether Title II of the ADA even applies to TRZ. Therefore, the Court should grant TRZ's motion for summary judgment as to Plaintiff's claims for violations of Title II of the ADA against TRZ.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's claims cannot survive Defendant TRZ Management, LLC's Motion for Summary Judgment, and therefore Defendant TRZ Management, LLC is entitled to judgment as a matter of law.

*Signature on the following page*

18

Turner Padget Graham & Laney, P.A.


*s/ Frank S. Stern*
Frank S. Stern, Federal Bar No. 12598
Post Office Box 1509
Greenville, South Carolina 29602
Direct:        864-552-4636
Fax:           864-282-5997
Greenville, South Carolina          FStern@turnerpadget.com
January 13, 2021                    ATTORNEYS FOR DEFENDANT TRZ
                                    MANAGEMENT, LLC